### E. W. WOODARD v. STATE.

No. A-3743. Opinion Filed Nov. 30, 1921.

(201 Pac. 1000.)

(Syllabus.)

**Homicide — Evidence to Sustain Verdict for Assault with Intent to Kill.** In a prosecution for shooting another with intent to kill, evidence held sufficient to support the verdict and judgment of conviction.

Appeal from District Court, Stephens County; Cham Jones, Judge.

E. W. Woodard was convicted of assault to murder, and he appeals. Affirmed.

Bond & Kolb, for plaintiff in error.

The Attorney General and E. L. Fulton, Asst. Atty. Gen., for the State.

DOYLE, P. J. Plaintiff in error, Woodard, was convicted on a charge of shooting one Grover Grey with intent to kill, and his punishment fixed at imprisonment for a term of one year and one day. He has appealed from the judgment rendered upon such conviction, and there has been no appearance on his behalf in this court.

The errors assigned are substantially as follows: That the verdict is not sustained by sufficient evidence and is contrary to law; that the court erred in admitting incompetent testimony and in rejecting legal and material testimony, all to the prejudice of the rights of the defendant.

There is very little conflict in the evidence. It appears the defendant lived in a tenant house on the farm of the father of Grover Grey, and there was some disagreement over the fencing of a garden which resulted in the shooting charged.

Grover Grey testified:

"I went up by Mr. Woodard's house to see if he would fence his garden. He said he did not have any wire to fence it with. I told him to take one wire from the fence around the house. Then he said he did not have any posts. I went back to my father. He said he could use the posts at the barn. Then I returned to Mr. Woodard and told him where to get the posts, and he said it was my father's place to fence the garden. I said I did not think so, and started away. I had taken about five steps when I heard him say, 'God damn you, I will kill you,' I looked back. He had a shotgun on me, and it snapped. I said there was no need of shooting; we could fix it up without any trouble. He broke the gun and loaded it and shot me in the hand and side from the knee up. I fell. Then I saw him hold the gun on my father, and I heard him say, 'Old man, stop, or I will let you have the same thing.' "

Earl Cole testified:

"The defendant lived within half a mile of my place. About 9 o'clock the night before the shooting he came to my place and borrowed my Winchester shotgun."

Dr. Decker testified:

"I was called to attend Grover Grey. There were shot scattered from his knee up. Two penetrated the abdomen and 60 the leg. There were 23 shot in his hand, and 2 or 3 went through."

For the defendant his wife testified:

"Grover Grey came to our house that day and wanted us to fence the garden. My husband told him he didn't have any fence posts. He came back again in about 10 minutes and said, 'I am going to cut that feed or kill you.' My husband

was standing in the door. He raised his gun and shot towards his hand. Grover said, 'I will not say any more.' Then he fell, and his father came and fooled around him."

As a witness in his own behalf the defendant testified:

"Grover Grey started cutting my feed without asking me about it; I ordered him to stop and get off my premises until I gathered the crop and paid him the rent. The next day he came to my house and said, 'We are going to turn our stock in, and if you want your garden you had better fence it.' I said, 'You furnish the wire and I will fence it.' Then he went to his father. In about 10 minutes he came back and said, 'If you want to fence the garden, you can get your wire and post; we don't fence anything.' I was standing in the door. Then he said, 'I am going to cut that feed or I will shoot hell out of you,' and he made towards me. I grabbed the gun and shot him as quick as I could shoot. As he fell he said, 'Don't shoot me any more.' "

Where there is substantial evidence to show the guilt of the accused, this court will not weigh the sufficiency of the evidence to sustain a conviction. The weight of the evidence was for the jury. The rule is that a man will be presumed to intend the natural and necessary consequences of his act, and intent or design to kill in this class of cases may be presumed from the character of the weapon used.

After a careful examination of the record, we conclude that there was no error which could have been prejudicial to the defendant.

The judgment of the lower court is therefore affirmed.
MATSON and BESSEY, JJ., concur.